Mark A. Finkelstein (State Bar No. 173851)
mafinkelstein@jonesday.com
Meredith L. Williams (State Bar No. 292888)
mwilliams@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone:  +1.949.851.3939
Facsimile:   +1.949.553.7539

Tracy A. Stitt (*pro hac vice pending*)
tastitt@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  +1.202.879.3939
Facsimile:   +1.202.626.1700

Attorneys for Plaintiff
TREASURY WINE ESTATES AMERICAS
COMPANY

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREASURY WINE ESTATES AMERICAS COMPANY, a Delaware Corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>STAG'S LEAP WINE CELLARS, LLC, a California Limited Liability Company, and STE. MICHELLE WINE ESTATES LTD., a Washington Corporation,<br><br>            Defendants. | Case No. 3:16-cv-5764<br><br>TREASURY WINE ESTATES AMERICAS COMPANY'S COMPLAINT FOR DECLARATORY RELIEF<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Treasury Wine Estates Americas Company ("TWEAC" or "Plaintiff") seeks a declaratory judgment that the use of the brand name "The Stag" on certain labels associated with wine that will be offered for sale in California does not violate the Lanham Act or California law.  Defendants Stag's Leap Wine Cellars, LLC ("SLWC") and Ste. Michelle Wine Estates Ltd. ("SMWE") (collectively, "Defendants"), thus, cannot state a valid claim based on TWEAC's use or sale of such wine.

## I.  NATURE OF THE ACTION

1.      Defendants have asserted claims against Plaintiff in a separate, but related action filed in this Court, Case No. 3:16-CV-04922-RS, regarding Plaintiff's alleged use of "The Stag" name on proposed wine labels that Plaintiff did not use, and has no intention of using, in commerce.[1]  Plaintiff does, however, plan to use the name "The Stag" in connection with its wine, and has revised the labels that will be used in commerce.  Based on the allegations in Defendants' Complaint in the related action and the conduct of Defendants leading up to its filing, upon information and belief, Defendants will object to Plaintiff's revised labels because they bear the name "The Stag," and Defendants will assert similar violations of federal and state law against TWEAC's revised labels.

2.      Accordingly, Plaintiff brings this action for declaratory relief to combat Defendants' unfounded allegations, threats and claims that Plaintiff's introduction and use of the name "The Stag" in connection with wines bottled and sold in California violates the Lanham Act, 15 U.S.C. 1125(a) and Cal. Bus. & Prof. Code §§ 25241, 17200 and 17500.

///

///

---

[1] TWEAC has moved to dismiss all of the claims in Case No. 3:16-CV-04922-RS as legally improper, in part, because the labels relied upon by Defendants were never used and have been replaced by the revised label that is the subject of this action.

## II.  PARTIES

3.     TWEAC is a Delaware corporation with a principal place of business at 555 Gateway Drive, Napa, California 94558.

4.     Upon information and belief, SLWC is a California limited liability company with a principal place of business at 5766 Silverado Trail, Napa, California 94588.

5.     Upon information and belief, SMWE is a Washington corporation with a principal place of business at 14111 N.E. 145th Street, Woodinville, Washington 98072.

## III.  JURISDICTION AND VENUE

6.     The Declaratory Judgment counts herein arise under the Federal Lanham Act, Title 15, United States Code, and the laws of the State of California, namely the California Business & Professions Code, and are based on an actual justiciable controversy that exists between Plaintiff and Defendants.

7.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202 as they arise under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and the Declaratory Judgment Act.  This Court has supplementary jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Defendant SLWC is subject to personal jurisdiction because it resides in this judicial district.  Personal jurisdiction is proper over Defendant SMWE pursuant to Cal. Code of Civ. Proc. § 410.10 because, upon information and belief, it has transacted and done business in California, has solicited consumers in this judicial district, and has specifically targeted customers in this judicial district at least by virtue of its controlling ownership interest in Defendant SLWC.  This Court also has personal jurisdiction over both Defendants by virtue of, *inter alia*, their consent to personal jurisdiction in this Court in the related Case No. 3:16-CV-

1    04922-RS.

2         9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

3    because a substantial part of the events giving rise to these claims arose in this

4    judicial district.

5                      **IV.  FACTS COMMON TO ALL COUNTS**

6         10.     TWEAC, based in Napa Valley, California, is in the business of

7    producing and bottling wine and consists of 49 vineyards, 10 wineries, and

8    hundreds of brands and brand extensions in the United States.

9         11.     TWEAC is a subsidiary of global wine conglomerate Treasury Wine

10   Estates ("TWE"), one of the world's largest and most prestigious wine companies.

11   TWE's corporate headquarters is located in Melbourne, Australia, and TWE has 78

12   vineyards and 8 wineries in Australia, as well as established wineries in both New

13   Zealand and Italy.

14        12.     TWE's global portfolio of wines, including those sold through its

15   subsidiaries like TWEAC, is sold in over 100 countries in the world and consists of

16   some of the most recognized and awarded brands in the world.

17        13.     Brands that fall under the TWE umbrella include the Australia-based

18   brand St Huberts, and the California-based brand Stags' Leap.

19                         ***The St Huberts Brand***

20        14.     One of TWE's oldest and most celebrated brands is St Huberts, which

21   dates back to a vineyard founded in the Yarra Valley of Australia in 1862.

22        15.     St Huberts was named after the Patron Saint of the Hunt, a 7th Century

23   nobleman who turned his life around after an encounter with a magnificent stag

24   carrying a shining cross between his antlers.

25        16.     In a tribute to his patron saint, founder Hubert de Castella decided that

26   the wines of the original St Huberts Vineyard would bear the emblem of the stag,

27   and that tradition continues to this day.

28        17.     The St Huberts brand has enjoyed significant success for TWE through

the years, including receiving many wine awards as far back as 1881, when it was awarded the most meritorious exhibit at the great Melbourne International Exhibition and honored with the award of Grand Prix at the Paris Exposition of 1889—which was one of only fourteen such prizes given to wines from all over the world.

18.    As a result of its success, both the name and trademark "St Huberts" and the emblem of the stag shown below have come to symbolize high quality wines to consumers around the world.



19.    St Huberts has featured a stag emblem on its wines since as far back as the 19th century, such as shown on the bottle below, which dates to the 1880's:



20.     In 2008, St Huberts introduced a Pinot Noir from Victoria under the sub-brand "Hubert the Stag" or simply "The Stag."  The St Huberts "Hubert the Stag" Pinot Noir was introduced to expand the brand's customer base to another tier by offering a high quality Pinot at a modest price, and it enjoyed immediate success.

21.     In its brief history, St Huberts The Stag Pinot Noir has won numerous awards, including medals at various national Australian wine shows.

22.     At least as early as 2014, distributors in the United States had obtained Certificates of Label Approval ("COLA") from the Alcohol and Tobacco Tax and Trade Bureau ("TTB") for the labels to use on the imported "Hubert the Stag" wines.  The TTB COLA approvals for 2014, 2015 and 2016 are attached hereto as Exhibits 1-3.

23.     The success of St Huberts The Stag Pinot Noir showcased an opportunity for TWE to expand this more accessible tier of wines to other global markets through its network of wineries, including those operated by TWEAC in California.

24.     SLWC's efforts to impugn the quality of TWEAC's premium The Stag product, prior to launch, through its unfounded allegations that it is of lower quality is particularly surprising given that SMWE makes wines of comparable quality and price, such as under its Chateau Ste Michelle "Indian Wells" and Hawk Crest brands.

### *The Stags' Leap Brand*

25.     TWEAC is the producer of the world renowned Stags' Leap wine brand from the United States.  This brand was established in 1970 by TWEAC's predecessor-in-interest, Stags' Leap Winery, Inc., and has been produced and sold continuously since then.

26.     TWEAC's Stags' Leap brand took its name from the century-old estate of Horace and Minnie Chase known as Stags Leap Manor, and a winery built there

1  in 1893.  The original 240-acre estate, including the Stags' Leap Manor House and
2  gardens, remains intact and is part of the present-day Stags' Leap Winery.

3        27.     The Chase family was known for entertaining guests on a lavish scale,
4  and Stags' Leap Manor became a fashionable country resort in the mid-twentieth
5  century.  TWEAC's Stags' Leap Winery continues the tradition of hospitality and
6  rich history of winegrowing started by the Chase family.

7        28.     Stags' Leap Winery produces several acclaimed varieties of wine,
8  including Cabernet Sauvignon, Petite Sirah, Chardonnay, Rosé and Viognier.
9  Stags' Leap Winery has won numerous awards and accolades, including being
10  named as one of the Top 50 Most Popular Restaurant Brands of 2015 by Wine &
11  Spirits, and earning the Most Popular Cabernet designation in the Wine & Spirits
12  27th Annual Restaurant Poll.

13        29.     Over the years, many Stags' Leap wines have also received a 90+
14  rating from well-respected publications and world famous wine critics, including
15  the 2012 The Leap Cabernet Sauvignon (rated 94 by Wine Advocate and 93 by
16  Wine Enthusiast), the 2012 Audentia Cabernet Sauvignon (rated 95 by Wine
17  Advocate), the 2012 Ne Cede Malis Petit Sirah (rated 95+ by Wine Advocate), and
18  the 2011 Ne Cede Malis Petit Sirah (rated 93 and a "cellar selection" by Wine
19  Enthusiast, 91 by Wine Advocate, and 92 by Wine & Spirits).

20        30.     TWEAC owns United States Trademark Registration Nos. 1,116,457
21  and 1,987,337 for the STAGS' LEAP design and word mark, respectively, to
22  identify wine (collectively the "STAGS' LEAP Trademarks").  The first use
23  claimed in both of these applications dates back to March 31, 1974.  True and
24  correct copies of the foregoing registrations are attached hereto as Exhibits 4 and 5.
25  Both of these registrations are valid and have become incontestable.

26        31.     The "Stags' Leap" name, trademark, and the logo image of a stag
27  leaping off a cliff, as depicted below, have been constant identifiers of Stags' Leap
28  Winery since its inception in the 1970's.  Consumers have come to associate the

Stags' Leap name, trademark and logo image with high quality wines.



32.     Defendants cannot dispute that TWEAC owns the foregoing trademark registrations or that it has the exclusive rights to use the STAGS' LEAP Trademarks on wines in the United States.

### SLWC and The Consent Agreement

33.     Upon information and belief, SLWC was also founded in or around 1970.  SMWE acquired a majority interest in SLWC in 2007.

34.     Throughout the 1980's, SLWC and TWEAC's predecessor-in-interest were engaged in various disputes before State and Federal Courts and the Trademark Trial and Appeal Board regarding their respective trademark and trade name rights in marks and names which include the terms "Stag's Leap" and "Stags' Leap."

35.     In 1985, the parties settled all their disputes regarding the "Stag's Leap" and "Stags' Leap" marks, resulting in a Consent to Use and Register Agreement (the "Consent Agreement").  A true and correct copy of the Consent Agreement is attached hereto as Exhibit 6.

36.     Pursuant to the Consent Agreement, the parties agreed to coexist, and to each maintain their respective "Stags' Leap" and "Stag's Leap" word marks, which it was agreed were to be distinguishable by the alternating placement of the

1    apostrophe.

2        37.    Following the resolution of their disputes, the parties even collaborated

3    on a joint 1985 vintage of Cabernet Sauvignon called "Accord," which contained an

4    equal percentage of grapes from each estate.

5        38.    This peaceful coexistence and cooperative atmosphere continued for

6    the next 30 years, including the parties jointly opposing third-party trademark

7    applications in various jurisdictions around the world.

8                    ***The Stags Leap American Viticultural Area***

9        39.    Both TWEAC's Stags' Leap Winery and SLWC are located in an area

10   of Napa Valley that has come to be known as the Stags Leap District.  This area is

11   often referred to as a "valley within a valley" because it is bounded to the east by

12   the Stags Leap Palisades, to the west by the Napa River and rolling hills, to the

13   north by the Yountville Cross Road, and to the south by low-lying flatlands.

14       40.    In 1989, after TWEAC and SLWC had resolved their differences

15   regarding the "Stags' Leap" and "Stag's Leap" names, the Stags Leap District was

16   established as an American Viticultural Area ("AVA") within Napa Valley, and

17   thus received a formal appellation designation.  The AVA system is overseen by the

18   TTB and serves to designate and control the geography of grapes grown for wines

19   produced in the United States.  As a result of the Stags Leap District's designation

20   as an AVA, only wines with 85% or more of their grape content from within the

21   borders of that district can use the "Stags Leap" name to label the wine.

22       41.    Other appellations within the larger Napa Valley AVA include Atlas

23   Peak, Calistoga, Chiles Valley District, Coombsville, Diamond Mountain District,

24   Howell Mountain, Los Carneros, Mount Veeder, Oak Knoll District, Oakville,

25   Rutherford, Spring Mountain District, St. Helena, Wild Horse Valley, and

26   Yountville.

27       42.    The Stags Leap District is the smallest producing Napa AVA by

28   acreage, and the only AVA to be defined completely by soil, climate and natural

1  barriers.  It is known for producing distinctive Cabernet Sauvignon-based wines.

2       43.    TWEAC's Stags' Leap Winery and SLWC are not the only wineries in

3  the Stags Leap District.  Other wineries include:  Baldacci Family Vineyards;

4  Chimney Rock Winery; Cliff Lede Vineyards; Clos Du Val; Hartwell Vineyards;

5  Ilsley Vineyards; Lindstrom Wines; Malk Family Vineyards; Odette Estate Winery;

6  Pine Ridge Vineyards; Quixote Winery; Regusci Winery; Robinson Family

7  Vineyards; Shafer Vineyards; Silverado Vineyards; Steltzner Vineyards; Taylor

8  Family Vineyards; and Terlato Vineyards.

9       44.    The foregoing wineries, together with both TWEAC's Stags' Leap

10  Winery and SLWC, are members of the Stags Leap District Winegrowers

11  Association, a non-profit association of vintners and growers who strive to work

12  together to grow the reputation of the Stags Leap appellation and its wines.  (See

13  http://www.stagsleapdistrict.com/wineries.php, a true and correct copy of which is

14  attached hereto as Exhibit 7.)

15       45.    The members of the Stags Leap District Winegrowers Association,

16  including TWEAC's Stags' Leap Winery and SLWC, agreed to "work together in

17  an environment of camaraderie," as "[a]ll share a common desire and responsibility

18  to uphold the world-wide reputation of the region and the quality of its wines."

19  Thus, the Association's mission is to "work together to grow the reputation of the

20  appellation and its wines and share its quality with the wine loving world."  *Id.*

21       46.    By virtue of being a designated AVA, the use of the Stags Leap

22  appellation is protected by California law, California Business & Professions Code

23  Section 25241(3)(b).

24       47.    Defendants cannot dispute that TWEAC's Stags' Leap Winery

25  produces wines sourced from the Stags Leap District as required by California law.

26          ***TWEAC's Launch of St Huberts The Stag in the US***

27       48.    In 2016, TWE sought to innovate its wine offerings, and in particular

28  to strengthen and broaden the appeal of its St Huberts brand to a new generation of

consumers—28 - 40 year old urban males with reasonable wine knowledge—while still attracting the brand's older core consumers, thanks to St Huberts' winemaking credentials.

49.    The result was the expansion of "The Stag" tier of wines under the St Huberts brand.  The name "The Stag" continues the long association of the stag and imagery of that creature with the historic St Huberts winemaker.  With a striking new label design, the wines celebrate the elegance and grace of the noble Stag, and its connection to St Huberts, one of the first wineries established in Victoria, Australia, and named in honor of the Patron Saint of the Hunt.

50.    Due to the great market success of "The Stag" Pinot Noir in Australia, TWE recently introduced a Chardonnay and Shiraz to "The Stag" tier, also from Victoria.  (See press release from Australia launch attached hereto as Exhibit 8.)

51.    Eager to further build on the success of its "The Stag" sub-brand of Victorian wines under the St Huberts brand, TWE began considering the possibility of extending "The Stag" tier of wines to other wine growing regions outside of Australia, including through its subsidiary TWEAC in California.

52.    As a result, TWEAC began exploring the introduction of a Cabernet Sauvignon from California under "The Stag" name.

53.    Early in the process of exploring the expansion of  "The Stag" tier of wines to the United States, TWEAC submitted various label approval applications to the TTB while still developing a brand strategy, including those that formed the basis for the Complaint filed by SLWC and SMWE in Case No. 3:16-CV-04922-RS.  TWEAC ultimately decided to change the labels, however, and the labels shown in that Complaint were never used, nor does TWEAC have any intent to use them in commerce.  Indeed, TWEAC voluntarily surrendered the COLAs for the labels cited in Defendants' Complaint and, thus, may not sell wine bearing those labels in the United States.

54.    The label design for the St Huberts The Stag Cabernet Sauvignon that

1  TWEAC will use on its wines in California is the same label as the one that has

2  been used previously in Australia, with the exception of the bottling location

3  statement and the addition of a St Hubert The Stag logo to the back label.  The

4  labels that TWEAC will use and that have been approved by the TTB are

5  reproduced below and attached hereto as Exhibit 9.

 

55.    The text on the back label reads as follows: "The Stag is a symbol of

power and elegance.  The stuff of myth and legend revered the world over, he personifies strength and grace.  This opulent, yet refined Cabernet Sauvignon celebrates this noble creature.  Cooler climate in style; ripe dark berries, spice and a hint of oak support velvety tannins and a lengthy finish.  In the tradition of St Hubert, our patron saint, this wine is worthy of the hunt."

56.    "The Stag" wine will also include the well-known St Huberts emblem, and the words "St Huberts The Stag," on the neck of the wine, strikingly visible from both the front and back.

57.    As depicted above, the final labels for "The Stag" Cabernet Sauvignon reflect the connection to the historic St Huberts brand, and make no mention of Stags' Leap Winery, Winemaker Christophe Paubert, the Stags Leap appellation, the lore of the leaping stag, or any other term or reference that Defendants contend is likely to confuse consumers into thinking the wine originated in the Stags Leap District.  On the contrary, they clearly state that the wine's origin is the North Coast region, an AVA also recognized by the State of California.

### SLWC Shatters Thirty Years of Peaceful Coexistence

58.    The parties' 30 years of peaceful coexistence and history of cooperation came to a screeching halt in August of 2016 when Defendants learned of TWEAC's plans to release a wine under the name "The Stag," and rushed to file a lawsuit in this Court based on trumped-up allegations and baseless claims that TWEAC violated the Lanham Act and California law by allegedly using that name in connection with wine not sourced from the Stags Leap District.

59.    In their hurry to create bad press for TWEAC, Defendants filed their Complaint based on proposed labels that were never used in commerce, and subsequently surrendered, and left out or mischaracterized other key facts, necessitating the filing of this claim for Declaratory Relief regarding the labels that will bear "The Stag" name on St Huberts wine offered for sale and/or sold by TWEAC in the United States and California.

60.     As even the allegations in Defendants' hastily-filed Complaint demonstrate, TWEAC attempted to remain cooperative with Defendants in the spirit of the Consent Agreement and to uphold the mission of the Stags Leap District Winegrowers Association, despite Defendants' aggressive and threatening tactics to date.

61.     By way of example, when Defendants raised concerns with TWEAC's advertising of its Stags' Leap wine as "the Original," TWEAC—acting in good faith and cognizant of the longstanding relationship between the parties—agreed to change the tagline.

62.     Similarly, after Defendants complained to TWEAC about the proposed labels that TWEAC had submitted to the TTB for approval, the CEO of TWE called the CEO of SMWE at approximately 4:30 p.m. (Pacific Time) on Thursday, August 25, 2016—prior to the filing of SLWC's complaint—to confirm that "The Stag" would have no linkage to Stags' Leap Winery, the winemaker Christophe Paubert, or Stags Leap District; and that "The Stag" concept and imagery was in fact derived from the Australian St Huberts' "The Stag" brand that was already on the Australian market.

63.     Therefore, what makes Defendants' complaint both legally, and morally, improper is that Defendants knew or should have known that none of the proposed labels about which Defendants complain had ever been, or would ever be, used in commerce, and instead TWEAC had already voluntarily surrendered two of the COLAs for these labels (and would voluntarily surrender the third).  Defendants conveniently omitted those facts from its lawsuit, which was filed in order to generate publicity and put pressure on TWEAC to abandon its legally-permissible efforts to sell a wine in California called "The Stag."

64.     Moreover, as shown above, TWEAC has since made further changes to its labels for "The Stag" brand to be released in the United States, clarifying that it will be a sub-brand to the St Huberts brand, and continuing the association of the

1    stag emblem and imagery with that well-known brand

2        65.    Nevertheless, armed with its one-sided version of the facts and eager

3    to engage in a smear campaign against TWEAC, SLWC filed a lawsuit claiming

4    that TWEAC's alleged use of "The Stag" on proposed labels violated federal and

5    state law because it is allegedly confusingly similar to the Stags Leap District AVA.

6        66.    In a last-minute attempt to bolster its claims, SLWC filed two new

7    applications for the STAG'S LEAP trademarks with the United States PTO in early

8    August of 2016 shortly before filing its Complaint—and after the current dispute

9    with TWEAC over "The Stag" name began.  Defendants then attempted to rely on

10   ownership of those pending applications to support their allegations.

11       67.    Tellingly, Defendants make no mention in their Complaint of the two

12   existing registrations that TWEAC has owned for decades for its STAGS' LEAP

13   Trademarks, which undermine any assertion of a false designation of origin or

14   trademark infringement.

15       68.    A closer look at Defendants' allegations and accusations against

16   TWEAC regarding the use of the name "The Stag" reveal that it is Defendants, not

17   TWEAC, that seek to expand and abuse both their rights to the "Stag's Leap" mark

18   under the Consent Agreement, and the goodwill associated with the Stags Leap

19   appellation.

20       69.    Unable to rely solely on the alleged likelihood of confusion between

21   "The Stag" and SLWC's "Stag's Leap" mark, given the clear lack of any similarity

22   between these two brands and their related labeling, Defendants instead have

23   attempted to use the Stags Leap appellation and the goodwill associated therewith

24   as a basis for their claim that consumers will be confused as to the origin of "The

25   Stag" wines.

26       70.    Thus, Defendants have taken it upon themselves to act as the self-

27   appointed "enforcer" for the Stags Leap District Winegrowers Association against

28   TWEAC, a fellow member, claiming that the use of the term "Stag" in a wine not

1   produced in the Stags Leap District violates both the Lanham Act and California

2   law.  In essence, Defendants have accused TWEAC of harming the same goodwill

3   that TWEAC itself enjoys for its established Stags' Leap brand of wines.  Such

4   accusations are nonsensical.

5         71.   What is more, SLWC's claims are completely hypocritical, as it has its

6   own long history of using its Stag's Leap name in connection with wines—

7   including Cabernet Sauvignon varieties—that are cheaper and *not* sourced from the

8   Stags Leap District.  Indeed, from at least 1976 through 2008, SLWC produced

9   wines under its lower-cost brand "Hawk Crest," which were sourced from several

10  appellations outside the Stags Leap District, including from what it contends is the

11  "inferior" North Coast region, that include a statement that they are "bottled by

12  Stag's Leap Wine Cellars" or "Cellared & Bottled by SLWC, St. Helena, CA.,

13  U.S.A.," as shown below:

14




NAI-1502131596v5

1  (See Exhibit 10, attached hereto depicting pictures of bottles of such wines

2  purchased in the United States.)

3      72.     Further, SLWC obtained its own COLAs for the "inferior" North

4  Coast wine that prominently displayed "Stag's Leap Wine Cellars" directly on the

5  label, such as the label shown below:



14  (See Exhibit 11, attached hereto depicting certain COLAs SLWC obtained from the

15  TTB).  SLWC even actively promoted its Hawk Crest brand on its website, using its

16  Stag's Leap Wine Cellars logo:



- 16 -

COMPLAINT FOR DEC. RELIEF

73.     Given SLWC's long history of attempting to bolster sales of its wine sourced from grapes grown from outside of the Stags Leap District AVA, and indeed outside of the Napa Valley AVA, by associating that wine with "Stag's Leap Wine Cellars" or "SLWC," SLWC's lawsuit against TWEAC is all the more outrageous.  Indeed, SLWC, for more than 35 years, has engaged in the exact same type of actions that it claims are "cheating," "shameless," and "deceptive," when applied to labels that TWEAC never even used.

74.     SLWC's "shameless" and "deceptive" efforts—to use its words—to establish a connection between its cheaper Hawk Crest wine and Stag's Leap Wine Cellars were successful.  Indeed, consumers are often explicitly informed of the relationship between Hawk Crest and Stag's Leap.  For instance, Hilton Hotels advertised Hawk Crest wine as follows:

Hawk Crest by Stag's Leap Wine Cellars, California                                    44
*Aromas of bright cherries with overtones of truffle, nutmeg, and a touch of smoke introduce this lovely wine. In the mouth, dark fruit flavors—cassis, plum—are joined by savory notes, including sage and black pepper.*

And the wine.com website shows a connection between Hawk Crest and Stag's Leap Wine Cellars:



75.     For these reasons, SLWC's actions, including its hypocritical claims against TWEAC, are morally reprehensible, as they violate the letter and spirit of the Stags Leap District Winegrowers Association's mission.  Indeed, the trumped-up claims against TWEAC are based on TWEAC's proposed (now surrendered) labels that were never used in commerce, whereas SLWC has been promoting its Hawk Crest brand by trading off the goodwill of its Stag's Leap brand, and the Stags Leap District AVA, for decades.

76.     There are numerous brands of wine that include the term "Stag" and are not sourced from the Stags Leap District, including Stag Hollow, Silver Stag, King Stag and White Stag.  (See https://staghollow.com/, http://www.silverstagwinery.com/, http://www.kingstagwines.com/, http://store.hazlitt1852.com/white-stag-c22.aspx, true and correct copies of which are attached here to as Exhibit 12).

77.     Upon information and belief, Defendants have not asserted that any of the foregoing brands of wine violate the Lanham Act or California law, or otherwise harm the goodwill associated with either the "Stag's Leap" mark, or the Stags Leap appellation.

78.     Thus, while SLWC claims its lawsuit against TWEAC is about protecting the Stags Leap AVA, as well as consumers who value wine from that AVA, SLWC's silence in response to numerous other "Stag" brands, as well as its own history of using the "Stag's Leap" name to sell its Hawk Crest wine sourced from appellations outside of the Stags Leap District AVA, demonstrate that its lawsuit against TWEAC is nothing more than an improper use of the legal system to attempt to stifle lawful competition.

79.     Just like not all "Stag" wines are sourced from the Stags Leap District, not all wines with the term "Diamond" in their name are sourced from the Diamond Mountain AVA.  (See, e.g., http://www.arrowheadwine.com/diamond.html, http://www.fulkersonwinery.com/diamond,

1  http://goosewatch.com/products/diamond/, and

2  https://www.francisfordcoppolawinery.com/wine/diamond, true and correct copies

3  of which are attached hereto as Exhibit 13).

4       80.    There is also a Wild Horse Winery that sells wines with grapes

5  sourced outside of the Wild Horse Valley AVA.  (See

6  http://www.wildhorsewinery.com/, a true and correct copy of which is attached

7  hereto as Exhibit 14).

8       81.    These examples show that consumers understand that wine brands can

9  share a word from an AVA without creating consumer confusion.  Indeed, the

10  USPTO database reveals that there are more than 100 registered and pending

11  trademarks that contain the word "stag," including many in classes 32 and 33.

12      82.    The name "The Stag" for TWEAC's wine does not signify or refer to

13  the geographic origin of the wine, and Defendants have no basis to claim that

14  TWEAC's use of that name on a wine not sourced from the Stags Leap District, as

15  shown in Exhibit 9, will violate either the Lanham Act or California law.

16                          **V. COUNT ONE**

17      **Declaratory Judgment – No Violation of 15 U.S.C. § 1125(a)**

18      83.    TWEAC realleges and incorporates by reference Paragraphs 1-82 as

19  though fully set forth herein.

20      84.    As evidenced by Defendants' Complaint in Case No. 3:16-CV-04922

21  and the allegations set forth above, an actual and justiciable controversy exists

22  between TWEAC and Defendants regarding the use of the brand name "The Stag"

23  on wine as shown in the labels depicted in Exhibit 9.

24      85.    Defendants have asserted that TWEAC's use of the brand name "The

25  Stag" on wine violates the Lanham Act, 15 U.S.C. § 1125(a) because it constitutes

26  unfair competition and a false designation of origin or false or misleading

27  description or representation of fact regarding the origin of that wine.

28      86.    The use of the brand name "The Stag" on wine as shown in the labels

depicted in Exhibit 9, is not a false designation of origin because it does not signify to consumers that the wine is sourced from the Stags Leap District.

87.     The use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 is not a false or misleading representation of fact.

88.     The use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 is not likely to cause confusion or mistake, or to deceive consumers as to sponsorship, affiliation, or the origin of the wine.

89.     Accordingly, pursuant to 28 U.S.C. §§ 2201 and 2202,  TWEAC is entitled to a declaratory judgment that TWEAC has not violated 15 U.S.C. § 1125(a).

## VI. COUNT TWO

### Declaratory Judgment – No Violation of

### Cal. Bus. & Prof. Code §§ 25241, 17200, and 17500

90.     TWEAC realleges and incorporates by reference Paragraphs 1-89 as though fully set forth herein.

91.     As evidenced by Defendants' Complaint in Case No. 3:16-CV-04922 and the allegations set forth above, an actual and justiciable controversy exists between TWEAC and Defendants regarding the use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9.

92.     Defendants have asserted that TWEAC's use of the brand name "The Stag" on wine violates Cal. Bus. & Prof. Code § 17200 because it violates Cal. Bus. & Prof. Code §§ 25241 and 17500.

93.     The use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 does not constitute an unlawful, unfair or fraudulent business practice.

94.     The use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 is not a false statement, nor is it likely to deceive or mislead consumers.

95.     The brand name "The Stag" is not likely to cause confusion as to the origin of the wine.

96.     TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 does not violate Cal. Bus. & Prof. Code §§ 25241.

97.     TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 does not violate Cal. Bus. & Prof. Code §§ 17500.

98.     Accordingly, pursuant to 28 U.S.C. §§ 2201 and 2202, TWEAC is entitled to a declaratory judgment that TWEAC has not violated Cal. Bus. & Prof. Code §§ 25241, 17200 and 17500.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, TWEAC requests that judgment be entered in its favor and against Defendants as follows:

1.     Enter an order finding that TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 does not violate 15 U.S.C. § 1125(a).

2.     Enter an order finding that TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9 does not violate Cal. Bus. & Prof. Code § 25241.

3.     Enter an order finding that TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9, does not violate Cal. Bus. & Prof. Code § 17500.

4.     Enter an order finding that TWEAC's use of the brand name "The Stag" on wine as shown in the labels depicted in Exhibit 9, does not violate Cal. Bus. & Prof. Code § 17200.

5.     Finding this case exceptional and awarding TWEAC its fees under 15 U.S.C. § 1117.

///

///

6.    Awarding such other and further relief as the Court seems just and proper under the circumstances.

Dated:          October 6, 2016          JONES DAY


By: */s/ Mark A. Finkelstein*
          Mark A. Finkelstein

Attorneys for Plaintiff
TREASURY WINE ESTATES
AMERICAS COMPANY

- 22 -          COMPLAINT FOR DEC. RELIEF

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiff Treasury Wine Estates Americas Company hereby demands a trial

3    by jury as to all issues so triable.

4    Dated:          October 6, 2016          JONES DAY

5

6                                            By: */s/ Mark A. Finkelstein*

7                                                Mark A. Finkelstein

8                                            Attorneys for Plaintiff
                                             TREASURY WINE ESTATES
9                                            AMERICAS COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28